**Case No. 13-14008**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
_____

GULF COAST COLLECTION BUREAU, INC.,
*Appellant-Defendant*,

v.

MARK S. MAIS,
*Appellee-Plaintiff*

_____

Interlocutory Appeal from the United States District Court,
Southern District of Florida, Miami Division,
Case No. 11-61936-Civ-Scola
_____

**BRIEF OF THE FEDERAL COMMUNICATIONS COMMISSION
AS AMICUS CURIAE IN SUPPORT OF
APPELLANT-DEFENDANT ON JURISDICTION**
_____

JONATHAN B. SALLET
ACTING GENERAL COUNSEL

JACOB M. LEWIS
ASSOCIATE GENERAL COUNSEL

PAMELA L. SMITH
COUNSEL
FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740

December 20, 2013

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the Federal Communications Commission states that it is an independent agency of the U.S. government. In addition to the Federal Communications Commission and its attorneys, Jonathan B. Sallet, Jacob M. Lewis, and Pamela L. Smith, the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal are listed in the Appellant's Initial Brief, as supplemented by the Brief for Plaintiff-Appellee Mark S. Mais, and the Brief of ACA International As Amicus Curiae in Support of Appellant.

# TABLE OF CONTENTS

Table Of Authorities.......................................................................... ii

Statement Of Interest.......................................................................1

Statement Of The Issue ...................................................................2

Statutory And Regulatory Background ..........................................2

Factual And Procedural Background ...............................................8

Summary Of Argument ..................................................................10

Argument .........................................................................................11

    A.   The District Court's Decision Conflicts with the
         Statutory Scheme and with the Decisions of Other Courts
         that Have Considered the Hobbs Act in the Context of
         TCPA Cases. ..................................................................11

    B.   The District Court's Decision Has Serious Adverse
         Consequences for Judicial Review of FCC Orders............................16

Conclusion......................................................................................19

i

## TABLE OF AUTHORITIES

**CASES**

*CE Designs, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 933 (2011) ................................................................................ 13, 14, 16

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984) ........................................................................................9

*City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116 (7th Cir. 1982)..................................................... 14, 16

*Columbia  Broad. Sys., Inc. v. United States*, 316 U.S. 407, 62 S. Ct. 1194 (1942) ...............................................12

*Dayton Power & Light Co. v. EPA*, 520 F.2d 703 (6th Cir. 1975) ...............................................................17

*FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 104 S. Ct. 1936 (1984) .............................................. 12, 16

*Leyse v. Clear Channel Broad., Inc.*, 2013 WL 5926700 (6th Cir. Nov. 5, 2013) ...................................12

*Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740 (2012)...........................................3

*Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013)........................... 13, 14, 16, 18

*Self v. BellSouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012).................................................. 10, 12, 13, 16

*U.S. v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458 (8th Cir. 2000) ........................... 13, 15, 16

**STATUTES**

28 U.S.C. § 2112(a)..........................................................................17

28 U.S.C. § 2341, *et seq.*...............................................................11

28 U.S.C. § 2342(1) ................................................................ passim

28 U.S.C. § 2344 ....................................................................... 8, 16

47 U.S.C. § 227 ...............................................................................1

47 U.S.C. § 227(b)(1)(A)(iii) .................................................... 3, 10

47 U.S.C. § 227(b)(3)......................................................................3

47 U.S.C. § 227(g) ...........................................................3

47 U.S.C. § 402 ......................................................... 1, 10

47 U.S.C. § 402(a) .................................................... 7, 8, 11

47 U.S.C. § 402(b) ..........................................................7

47 U.S.C. § 503 ...........................................................3

47 U.S.C. §§ 151 *et seq.* ......................................................1

Pub. L. No. 102-243, 105 Stat. 2394 (1991) ...................................2

## OTHER AUTHORITIES

H. Rep. No. 102-317 (1991) ...............................................5

## REGULATIONS

47 C.F.R. § 1.401 ........................................................16

47 C.F.R. § 64.1200(a)(2) .................................................6, 7

47 C.F.R. § 64.1200(a)(3)(v) ...............................................7

47 C.F.R. § 64.1201(f)(12) ................................................6

## ADMINISTRATIVE DECISIONS

*Rules and Regulations Implementing the Telephone
    Consumer Protection Act of 1991*, 27 FCC Rcd
    1830 (2012) ......................................................6, 7

*Rules and Regulations Implementing the Telephone
    Consumer Protection Act of 1991*, Report and
    Order, 7 FCC Rcd 8752 (1992) ......................................4

*Rules and Regulations Implementing the Telephone
    Consumer Protection Act of 1991; Request of
    ACA International for Clarification and
    Declaratory Ruling,* Declaratory Ruling, 23 FCC
    Rcd 559 (2008) ....................................................5, 6

*\* Cases and other authorities principally relied upon are marked with
asterisks.*

## STATEMENT OF INTEREST

The Federal Communications Commission ("FCC") has primary responsibility for implementing and enforcing the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq.* ("Communications Act"), including the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  In particular, the FCC has an interest in ensuring that section 402 of the Communications Act, 47 U.S.C. § 402, which vests judicial review of Commission orders exclusively in the federal courts of appeals, is correctly interpreted.  The FCC respectfully files this brief as amicus curiae in support of appellant-defendant.

## STATEMENT OF THE ISSUE

The United States District Court for the Southern District of Florida certified the following question (and three more[1]) to the Court:  Whether a district court has jurisdiction under the Hobbs Act to review an FCC order in a TCPA case when plaintiff does not challenge the validity of the order. *Mais*, at *24.

Answer:  As explained below, the FCC believes that the answer to the district court's question is no.

## STATUTORY AND REGULATORY BACKGROUND

1. The TCPA.  In December 1991, Congress adopted the Telephone Consumer Protection Act ("TCPA") by adding a new section – 47 U.S.C. § 227 – to the Communications Act of 1934.  *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991).

---

[1] The FCC does not address the following three questions the district court also certified to the Court: "2) If the district court has such jurisdiction, whether the FCC's pronouncements on the issues of 'prior express consent' and vicarious liability are entitled to deference under Chevron; 3) If the district court lacks such jurisdiction, whether the FCC's opinion on 'prior express consent' is limited to the consumer credit transaction arena such that it does not apply to the medical care setting; and 4) Whether a medical provider's consent to use and disclose patient information, including phone numbers, under HIPAA equates to 'prior express consent' for affiliates and agents of that provider to call the patient on his cell phone for debt collection purposes using an automated telephone dialing system."  *Mais v. Gulf Coast Collection Bureau*, No. 11-61936-Civ, 2013 WL 1899616, at *25 (S.D. Fla. May 8, 2013 ("*Mais*").

2

Among other things, the TCPA regulates the use of automatic telephone dialing systems[2] and the use of prerecorded or artificial voice messages.  As relevant here, the TCPA provides that it is "unlawful for any person within the United States–(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– . . . (iii) to any telephone number assigned to a . . . cellular telephone service, . . . ."  47 U.S.C. § 227(b)(1)(A)(iii).[3]

In addition to enforcement in lawsuits by the FCC, *see* 47 U.S.C. § 503, and state attorneys general, *see* 47 U.S.C. § 227(g), the TCPA creates a private right of action to enforce its terms.  *See* 47 U.S.C. § 227(b)(3) (providing for damages and/or injunctive relief).  Federal and state courts have concurrent jurisdiction over private-party lawsuits arising under the TCPA.  *Mims v. Arrow Fin. Servs.*, 132 S. Ct. 740 (2012).

_____

[2] The Communications Act defines an automatic telephone dialing system as "equipment which has the capacity–(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

[3] The FCC's implementing rule similarly provides that "[n]o person or entity may: (1) initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) [t]o any telephone number assigned to a . . . cellular telephone service, . . . ."  47 C.F.R. § 64.1200(a)(1)(iii).

3

2. <u>"Prior Express Consent" Within the Meaning of Section 227(b)(1)(A)(iii) of the TCPA</u>. The FCC first interpreted the TCPA's "prior express consent" requirement in its order implementing the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752, 8768-69 (¶¶ 29-31) (1992) ("1992 FCC Order"). In doing so, the agency agreed with the view expressed by many commenters "that any telephone subscriber that provides his or her telephone number to a business does so with the expectation that the party to whom the number was given will return the call," and that "any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released." 7 FCC Rcd at 8769 (¶ 30). On the basis of those comments, the FCC concluded that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary," and thus, "[callers] will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." *Id.* at ¶ 31. In reaching this construction of the statutory language, the FCC derived support from the House Report preceding the TCPA's enactment, which noted that "the called party has in essence requested the contact by providing the caller with their

telephone number for use in normal business communications." *Id*. at n.57 (citing H. Rep. No. 102-317, at 13) (1991)).

In 2008, the FCC addressed a petition filed by ACA International, a trade organization of credit and collection companies, which asked the agency to "clarify" that the TCPA's prohibition against autodialed or prerecorded calls to wireless telephone numbers does not apply to "creditors and collectors when calling wireless telephone numbers to recover payments for goods and services received by consumers." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling,* Declaratory Ruling, 23 FCC Rcd 559, 563 (¶ 8) (2008) ("2008 FCC Ruling").

The FCC concluded that "the provision of a cell phone number to a creditor, *e.g*., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." 23 FCC Rcd at 564 (¶ 9). Because the agency found that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party," the FCC "clarif[ied] that such calls" by creditors "are permissible." *Ibid*. *Accord id*. at 559 (¶ 1). The FCC also "emphasize[d] that prior express consent is deemed to be granted

5

only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." 23 FCC Rcd at 564-65 (¶ 10). The FCC determined that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *Ibid*.

In 2012, the FCC revised its TCPA rules governing telemarketing to require "prior express written consent for all telephone calls using an automatic telephone dialing system or a prerecorded voice to deliver a telemarketing message to wireless numbers and residential lines." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830, 1838 (¶20) (2012) ("2012 FCC Order"). [4] *See* 47 C.F.R. § 64.1200(a)(2). While the revised rules "require prior written consent for autodialed or prerecorded *telemarketing* calls," the FCC "maintained the existing consent rules for *non-telemarketing informational* calls." 2012 FCC Order, 27 FCC Rcd at 1841 (¶28) (emphasis in original). Additionally, the FCC exempted from the TCPA's prior express consent requirement "all

---

[4] "Telemarketing" is defined by FCC rules as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, good, or services, which is transmitted to any person." 47 C.F.R. § 64.1201(f)(12). As the Commission determined in 2008, "calls solely for the purpose of debt collection . . . do not constitute telemarketing." 2008 Ruling, 23 FCC Rcd at 565 (¶11).

prerecorded health care-related calls to residential lines that are subject to HIPAA [the Health Insurance Portability and Accountability Act of 1996]," "[i]n view of the privacy protections afforded under [that statute]." 2012 FCC Order, 27 FCC Rcd at 1852 (¶57). See 47 C.F.R. § 64.1200(a)(3)(v). *See also* 47 C.F.R. § 64.1200(a)(2) (exempting from prior express written consent requirement autodialed or prerecorded telemarketing calls to telephone numbers assigned to a cellular telephone service "that deliver[] a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,'" as defined by HIPAA rules).

3. <u>Statutory Provisions Governing Judicial Review of FCC Orders</u>. The Communications Act establishes the exclusive mechanism for challenging or determining the validity of orders issued by the FCC. Section 402(a) of the Communications Act specifies that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission . . . shall be brought as provided by and in the manner prescribed in chapter 158 of title 28, [United States Code]." 47 U.S.C. § 402(a).[5] The cross-referenced chapter of the U.S. Code, which is commonly known as the Hobbs Act, provides in

---

[5] Judicial review of FCC licensing and other specified decisions is governed by 47 U.S.C. § 402(b), which vests exclusive jurisdiction even more narrowly in the United States Court of Appeals for the District of Columbia Circuit. Because the agency orders at issue do not fall within those listed in section 402(b), that provision is not applicable.

relevant part that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by [47 U.S.C. § 402(a)]." 28 U.S.C. § 2342(1). The Hobbs Act also specifies that "[a]ny party aggrieved by the [FCC's] final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. § 2344.

### FACTUAL AND PROCEDURAL BACKGROUND

1. <u>The Underlying Lawsuit</u>. Appellee-plaintiff Mark Mais filed suit in federal district court against appellant-defendant Gulf Coast Collection Bureau ("GCCB"), a debt collector, on a claim that GCCB violated the TCPA by using a predictive dialer to make between 15 and 30 calls to his cellular telephone number, and left four messages, in an effort to collect a debt Mais had incurred for medical services. *Mais*, at *2. Mais's wife had provided the cellular telephone number on his behalf at the time the medical services were rendered. *Id.,* *1. Expressly relying on the 2008 FCC Ruling, GCCB moved the district court for summary judgment on the ground that such calls had been made with Mais's (via his spouse) prior express consent and thus GCCB could not be held liable for violating the TCPA. *Id.*, at *2.

2. <u>The District Court's Decision</u>.  The district court denied summary judgment.  In doing so, the court rejected GCCB's argument "that it was bound by the 2008 FCC Ruling and without the authority or jurisdiction to review it for consistency with the statute." *Id*., at *5.  The court acknowledged that under the Hobbs Act, "the federal courts of appeals have exclusive jurisdiction to determine the validity of FCC orders 'made reviewable by section 402(a).'" *Id*., at *6.  The court nevertheless found that the Hobbs Act did not divest it of jurisdiction because  "the Plaintiff does not seek to collaterally attack an FCC order in any respect." *Id*., *8.  Instead, the court explained, "this action's central aim is not to invalidate any such order," but instead "the purpose of the lawsuit is to obtain damages for violations of the TCPA." *Ibid*.

"Having found no deprivation of jurisdiction," the district court next considered whether the 2008 FCC Ruling was entitled to deference under the two-part framework announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778 (1984) ("*Chevron*").  *Id.,* at *8.  It  concluded that the "FCC's construction [of "express consent"] is inconsistent with the statute's plain language," and therefore "is not entitled to deference." *Id.,* at * 9.   The district court thus "reject[ed]" the affirmative defense that the calls made to Mais's cellular telephone number were

9

permissible under the TCPA, and decided that "[GCCB's] argument, like the 2008 FCC Ruling, is inconsistent with the statute's plain language." *Id*. at *9.[6]

On GCCB's motion, the district court certified its judgment for interlocutory review.

## SUMMARY OF ARGUMENT

The district court lacked jurisdiction to refuse to follow the FCC's long-standing construction of the "prior express consent" requirement of section 227(b)(1)(A)(iii) of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  Instead, exclusive jurisdiction to determine the validity of final orders of the FCC is vested exclusively in the courts of appeals under the Communications Act and the Hobbs Act.  47 U.S.C. § 402; 28 U.S.C. § 2342(1); *Self v. BellSouth Mobility, Inc.*, 700 F.3d 453, 461-64 (11th Cir. 2012).

_____

[6] "Alternatively," the court found that: 1) the 2008 FCC Ruling "does not apply to the medical care setting," *Mais*, at *10; and 2) "[e]ven assuming that 2008 FCC Ruling does apply," GCCB had failed to show that Mais "consented to be called by the relevant creditor," *id.* at *11.  The FCC does not address the district court's alternative bases for denying summary judgment.

**ARGUMENT**

### A. The District Court's Decision Conflicts with the Statutory Scheme and with the Decisions of Other Courts that Have Considered the Hobbs Act in the Context of TCPA Cases.

Section 402(a) of the Communications Act, 47 U.S.C. § 402(a), specifies that (with certain exceptions not applicable here) any challenge to a final order of the FCC must be brought under the Hobbs Act, 28 U.S.C. § 2341, *et seq.* The Hobbs Act, in turn, gives the courts of appeals "*exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to *determine the validity* of" such action. 28 U.S.C. § 2342(l) (emphases added). In rejecting GCCB's affirmative defense that the autodialed calls it made to Mais's cellular telephone number were permissible under the TCPA, the district court bypassed the clearly expressed – and exclusive – mechanism for judicial review of FCC orders by also deciding that "the 2008 FCC Ruling, is inconsistent with the statute's plain language." *Mais*, at *9. The district court's decision is irreconcilable with other courts that have considered the Hobbs Act-jurisdictional question that has been certified to the Court, and thus threatens to destabilize settled procedures for judicial review of FCC orders.

1. The well-established mechanism for obtaining review of FCC orders is by means of a petition for review of the relevant FCC decision filed in the

11

appropriate court of appeals in an action in which the FCC is a party.  As we have noted, pursuant to section 402(a) of the Communications Act, "proceeding[s] to enjoin, set aside, annul, or suspend any order of the Commission" are (except in a limited class of cases not relevant here) required to be brought under the  Hobbs Act, which provides that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission."  28 U.S.C. § 2342(l).  It has long been settled that FCC orders adopting rules, even those embodying interpretive rulings, are "orders" subject to review under the Hobbs Act. *Columbia  Broad. Sys., Inc. v. United States*, 316 U.S. 407, 417, 62 S. Ct. 1194, 1200 (1942); *Leyse v. Clear Channel Broad., Inc.*, 2013 WL 5926700, at *10 (6th Cir. Nov. 5, 2013).

"Because the courts of appeals have exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC, the district courts do not have it." *Self,* 700 F.3d at 461 .  *See, e.g., FCC v. ITT World Communications, Inc.,* 466 U.S. 463, 468, 104 S. Ct. 1936, 1939 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."). *Accord*, *e.g*., *Leyse,* 2013 WL 5926700, at *3 ; *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013); *CE Designs, Ltd. v. Prism Bus. Media,*

12

*Inc.*, 606 F.3d 443, 450 (7th Cir. 2010), *cert. denied,* 131 S. Ct. 933 (2011).[7]

"That means," as this Court has explained, that "district courts cannot

determine the validity of FCC orders." *Self*, 700 F.3d at 461.

"[T]he procedural path designed by Congress serves a number of valid

goals:  It promotes judicial efficiency, vests an appellate panel rather than a

single district judge with the power of agency review, and allows 'uniform,

nationwide interpretation of the federal statute by the centralized expert

agency created by Congress' to enforce the TCPA." *CE Designs*, 606 F.3d at

450.  *Accord Nack*, 715 F.3d at 685-86.  *See also U.S. v. Any and All Radio*

*Station Transmission Equip*., 207 F.3d 458, 463 (8th Cir. 2000) (en banc) (the

Hobbs Act "ensure[s] review based on an administrative record made before

the agency charged with implementation of the statute," allows "uniformity

of decisionmaking because of uniform factfinding made by the agency," and

"brings[s] to bear the agency's expertise in engineering and other technical

questions." ).

---

[7] *See also Qwest Corp. v. Public Utils. Comm'n of Colorado*, 479 F.3d 1184, 1192 n.6 (10th Cir. 2007); *In re NextWave Pers. Commc'ns*, 200 F.3d 43, 54 (2d Cir. 1999; *Wilson v. A.H. Belo*, 87 F.3d 393 (9th Cir. 1996); *Bywater Neighborhood Ass'n v. Tricaro*, 879 F.2d 165, 167 (5th Cir. 1989), *cert. denied*, 494 U.S. 1004, 110 S. Ct. 1296 (1990); *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984).

2.  In the face of the Hobbs Act's settled limitations on its jurisdiction, the district court nonetheless decided that it was not "depriv[ed] of jurisdiction" to review – and to refuse to defer – the Commission's 2008 FCC Ruling regarding the TCPA's prior express consent requirement.  *Mais*, at *8, *9.  The court reasoned that because "the action seeks damages for debt collection calls that violate the TCPA," *Mais*, at *6, *see id*. at *8, and because "the 2008 FCC Ruling pertains to the Defendants' affirmative defense of consent," *id*., at *6, the lawsuit's "central aim is not to invalidate any [FCC] order."  *Id*., at *8.  The district court's reasoning is flawed on both counts.

Thus, whether a challenge to an FCC order "arises in a dispute between private parties makes no difference – the Hobbs Act's jurisdictional limitations are 'equally applicable whether [a party] wants to challenge the rule directly . . . or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit.'"  *CE Designs,* 606 F.3d at 448 (quoting *City of Peoria v. Gen. Elec. Cablevision Corp.*, 690 F.2d 116, 120 (7th Cir. 1982)).  "To hold otherwise merely because the [TCPA] issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act."  *Nack,* 715 F.3d at 686.

Likewise, that invalidity of the FCC's ruling is raised as a defense is of no moment.  "'[W]here the practical effect of a successful attack on the

14

enforcement of an order involves a determination of its validity,' such as a defense that a private enforcement action is based upon an invalid agency order, 'the statutory procedure for review provided by Congress remains applicable." *Ibid.* (citation omitted). *See also Any and All Radio*, 207 F.3d at 463 ("A defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike.").

Moreover, nothing in the Communications Act or the Hobbs Act suggests that the *purpose* of a litigant's suit – whether its "central aim" (*Mais*, at *8) is to enforce or undercut an FCC order – is an appropriate basis for determining jurisdiction. Regardless of the "purpose" (*Mais*, at *8) of a lawsuit, if its effect (as here) is to invite the reviewing court to "determine the validity of [a] final order[]"of the FCC, 28 U.S.C. § 2342(1), exclusive jurisdiction lies in the appropriate court of appeals on direct review. If a claim necessarily depends on establishing that parts of an FCC order "are wrong as a matter of law or otherwise invalid," then the party "may seek review of the relevant parts . . . and attempt to establish the invalidity of them in the court of appeals, after seeking reconsideration in the FCC, *see* 28

U.S.C. § 2344, but [the party] may not seek collateral review of them by filing claims in the district court." *Self,* 700 F.3d at 462.[8]

Finally, as this Court has explained, "[b]ecause the district court lacks jurisdiction to review the FCC's orders at all, it lacks jurisdiction to decide whether the orders are invalid because they are outside the jurisdictional authority of the agency." *Id.*, at 463 . "[A] court without jurisdiction to review agency action lacks jurisdiction to decide whether the agency had jurisdiction to act as it did." *Id.* at 464.[9]

In short, the validity of the 2008 FCC Ruling thus should not have been subjected to review by the district court but should have been regarded as binding law.

### B. The District Court's Decision Has Serious Adverse Consequences for Judicial Review of FCC Orders.

If the district court's decision is left to stand, the validity of FCC orders and rules could be called into question in a host of collateral challenges in

---

[8] A party that wishes to challenge an FCC decision after the Hobbs Act 60-day period for direct review has expired can petition the FCC for a new rulemaking proceeding, 47 C.F.R. § 1.401. *See ITT World*, 466 U.S. at 468 n.5; *Nack*, 715 F.3d at 685; *City of Peoria*, 690 F.2d at 121; *Any and All Radio*, 207 F.3d at 463. The FCC's disposition of any such petition would then be reviewable under the Hobbs Act in the ordinary course.

[9] "[D]eeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders." *CE Designs*, 606 F.3d at 448.

which the FCC is not a party and as to which its lawyers have no notice.  That result raises the specter of conflicting opinions from different courts as to whether a particular FCC order or rule is, or is not, valid.

Congress has provided, in 28 U.S.C. § 2112(a), a rule for consolidating multiple challenges to agency orders in a single court of appeals.  There would be little point to consolidating challenges to agency orders in a single court of appeals if the validity of the agency's order also could be challenged during the course of private litigation in courts across the country.  As the Sixth Circuit recognized in a different context, if the validity of an agency's "regulations were to be reviewed in the Court of Appeals for each circuit there would be a substantial risk of seriously inconsistent results and an inevitable delay in the effectuation of the important national policies underlying the" statute the agency was implementing.  *Dayton Power & Light Co. v. EPA*, 520 F.2d 703, 708 (6th Cir. 1975).  That is all the more true if district courts, and potentially state courts,[10] are found to have jurisdiction to

---

[10] As noted above, private-party litigation under the TCPA may be brought in state courts, as well as federal district courts.  Pursuant to the district court's decision, state courts could assert jurisdiction to determine the validity of FCC TCPA orders, because, as the district court implicitly held, the "central aim" of such private lawsuits is not to undercut or enforce the order.  *Mais*, at *8.

consider the validity of FCC orders and regulations in the context of private party litigation under the TCPA.

The ruling by the district court also threatens to substantially impair the FCC's ability to effectively defend its own orders in court.  The FCC lacks the resources to monitor all private-party cases brought under the TCPA in state and federal courts in order to ensure that the agency's interests are represented when its orders and rules are challenged in private-party actions. (Indeed, in this case, the FCC only learned of the district court's decision and the ensuing interlocutory appeal through happenstance.)[11]  Countenancing an end run around the limitations of the Hobbs Act by permitting collateral attacks on FCC orders in private lawsuits "could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency."  *Nack*, 715 F.3d at 686.

\* \* \* \* \*

It is a striking acknowledgment of the force of the governing precedent and of the applicable policy arguments that appellee-plaintiff Mark Mais does

---

[11] One non-exhaustive compilation of TCPA cases lists more than 1,650 such cases in federal and state courts.  *See* http://www.tcpalaw.com/free/cases.htm (Dec. 12, 2013).  In addition, during the first half of this year alone, more than 100,000 informal TCPA complaints were processed by the FCC.  *See* http://www.tr.com/online/trd/2013/td121213/index.htm (Dec. 12, 2013).

not defend the district court's Hobbs Act ruling on appeal.  Contending that the district court decided the issue "unnecessarily," Br. 31, Mais strenuously urges that this Court "should not reach" the question of the district court's jurisdiction to review the FCC's 2008 Ruling.  Br. 2-3, 31.  Instead, he asks this Court to "save the Hobbs Act for another day – when it is actually forced to confront the question."  Br. 34.

But in the ruling below, the district court expressly decided that it had jurisdiction to examine the FCC's 2008 Ruling, and concluded it was due no deference, *Mais*, at \*6-\*9.   And in its order certifying interlocutory appeal, the court identified the question of its jurisdiction in the face of Hobbs Act as the first of several "controlling questions of law."  *Mais*, at \*24.  Under the circumstances, it would be wholly inappropriate for this Court to ignore the district court's erroneous ruling on the Hobbs Act.  On the contrary, for the reasons we have set forth, the district court's ruling should be disavowed.

## CONCLUSION

As explained above, the district court lacked jurisdiction to review the FCC's interpretation of the TCPA's prior express consent requirement for calls made to a cellular telephone number using an automatic telephone dialing system.

19

Respectfully submitted,

JONATHAN B. SALLET
ACTING GENERAL COUNSEL

JACOB M. LEWIS
ASSOCIATE GENERAL COUNSEL

/s/ Pamela L. Smith

PAMELA L. SMITH
COUNSEL

FEDERAL COMMUNICATIONS
    COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740

December 20, 2013

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

GULF COAST COLLECTION BUREAU, INC.,

        APPELLANT-DEFENDANT,

    v.

MARK S. MAIS,

        APPELLEE-PLAINTIFF.

NO. 13-14008

CERTIFICATE OF COMPLIANCE

Pursuant to the requirements of Fed. R. App. P. 32(a)(7), I hereby certify that the accompanying Brief of the Federal Communications Commission As Amicus Curiae In Support of Appellant-Defendant on Jurisdiction in the captioned case contains 4,476 words.

/s/Pamela L. Smith
Pamela L. Smith
Counsel
Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740 (Telephone)
(202) 418-2819 (Fax)

December 20, 2013

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MARK S. MAIS, PLAINTIFF-APPELLEE

v.

GULF COAST COLLECTION BUREAU, INC., DEFENDANT-APPELLANT

## CERTIFICATE OF SERVICE

I, Pamela L. Smith, hereby certify that on December 20, 2013, I electronically filed the foregoing Brief of the Federal Communications Commission As Amicus Curiae In Support Of Appellant-Defendant On Jurisdiction with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


Deepak Gupta
Gupta Beck, PLLC
1625 Massachusetts Ave., N.W.
Suite 500
Washington, D.C. 20036
*Counsel for:  Mark S. Mais*

O. Randolph Bragg
Horwitz Horwitz & Associates, Ltd.
U.S. Department of Justice
25 E. Washington Street
Suite 900
Chicago, IL 60602
*Counsel for:  Mark S. Mais*


Donald A. Yarrough, Esq.
2000 E. Oakland Park Blvd
Suite 105
P.O. Box 11842
Fort Lauderdale, FL 33339
*Counsel for:  Mark S. Mais*

Ernest H. Kohlmyer, III
Urban Their Federer & Chinner, PA
200 S. Orange Ave
Suite 2025
Orlando, FL  32801
*Counsel for:  Gulf Coast Collection Bureau, Inc.*

Brian Melendez
Dykema Gossett, PLLC
90 S. 7th Street
Suite 4000
Minneapolis, MN 55402
*Counsel for:  ACA International*

/s/ Pamela L. Smith